The 4th District's Appellate Court of the State of Illinois has reconvened. The Honorable Peter C. Kavanaugh presiding. Thank you. We'll next call 4-23-0207. People of the State of Illinois. Appellee versus Danny Randall. Appellant counsel for the appellant. Please state your name for the record. Rachel Sansonetti. Thank you. And for the appellee? David Robinson for the appellate prosecutor with 7-11, Alex Jelizian. Very well. Thank you. Parties may proceed. Thank you, Your Honor. Good afternoon, Your Honors. Today I will be focusing on arguments two and three. And if the court has questions about argument one, I am prepared to answer those. In this case, officers violated Mr. Randall's Fourth Amendment rights when they searched his car without probable cause. This violation cannot be cured by claims that Mr. Randall consented as any acquiescence to a search request was not voluntary because Mr. Randall believed he was on parole and required to submit to searches. There is no dispute that Mr. Randall was not on parole that night. The good faith exception does not apply here because there is evidence of disregard for the veracity of information regarding an individual's parole status and the officers unreasonably relied on the lead's result, informing them that Mr. Randall was currently on parole. Whether to apply the exclusionary rule or the good faith exception requires an analysis of three factors. First, whether there is misconduct by police or law will deter future misconduct. And third, whether the benefits of exclusion outweigh the cost of exclusion. Here, there was misconduct by three government individuals and two government institutions. That is, Officers Ceja and Cizerle, and Parole Officer Shane Ernst, as well as the Illinois Department of Corrections and Parole as an Institution. Here, Officers Cizerle and Ceja ran a lead search, which showed a result that Mr. Randall was on parole. They relied on this result as a basis to believe that Mr. Randall was on parole, and they knew this gave them permission to search him for any reason. However, the manual instructs its users in its supervised release chapter that a result is not grounds for search, arrest, or detention, and is only to be used for safety purposes. Reasonable officers would have known this and would not have used it against its explicit instruction, and therefore constitutes misconduct. The Illinois Department of Corrections... Misconduct? That's misconduct? I understand there was consent, so this is all setting aside the argument as to whether or not consent was granted. Correct. Yes, this is a separate argument. And just repeat what the actual misconduct was. You referenced a dictate in a manual, and how did that rise to misconduct by the officers on this scene? Sure. So, misconduct can be unreasonable police conduct. As explained in Morgan and Arnold, it can just be unreasonableness. And so, it's unreasonable for officers to have used a search result in a way that its manual specifically instructs its users not to use it for. And that the confirming of the parole status. Correct. It was not improper for the officers to use leads. What was improper was for them to rely on it as the basis of their search. What they should have done is called parole to confirm the accuracy of the result. Well, what about the fact, should a defendant state that something to the effect, I think I'm on parole until next month, or something like that? How does that affect the equation? Sure. So, two things here. First, Mr. Randall believed he was on parole because he had not been adequately informed of his new release date by parole or his parole officer. Well, in that regard, and bookmark where you're at, so you can finish the question Justice Kavanaugh asked you, but what are you saying parole should have done that they didn't do? So, parole certainly should have had a conversation with Mr. Randall about his new release date. His parole officer Shane Ernst testified that he did not remember once having a conversation with Mr. Randall that his release date had been moved from December of of his actual release from parole any time prior to March the 15th. Because it seems to me that until that March 15th date passes without the defendant having committed any additional crimes, the parole officer wouldn't know whether that particular individual would actually then be off parole. Do you see what I mean here? The parole officer, as I understand it, notified a defendant by mail. I think I read in your brief that you thought that the parole officer should have called defendant on the day of his release or the day after his release. Yes, certainly Mr. Randall should have been informed in a timely fashion that he was released from parole. Okay, and so that I guess is the crux of my question. What constitutes timely release and what's the evidence on the record as to what constitutes timely release? Timely release is to know the day that you are off parole that you are no longer on parole. Parolees have greatly diminished rights while they're on parole, not just in terms of searches as is the issue here, but also other rights. So, for example, voting rights. And it's very serious when someone is on parole and when they don't have the same rights as other individuals and delaying the restoration of those rights or the knowledge that the rights have been restored is unreasonable on the part of the government. Was there evidence in this case that the defendant was notified in some way that wasn't the usual course by a parole officer? There is no evidence that Mr. Randall was informed of his new release date. Counsel, I have a question about the sequence of events. Is my understanding correct that Officer Sejof, that's how his name is pronounced, C-E-J-A, testified that when his partner arrived at the Circle K gas station, he observed the defendant in the driver's vehicle and during the subsequent traffic stop, he asked the defendant if he could search the vehicle. The defendant said, sure. And then Sejof asked the defendant if he was on parole and the defendant said he was. Is that the sequence of events according to Officer Sejof's testimony? The sequence of events according to Officer Sejof's testimony is that he asked Mr. Randall whether he was on parole and immediately after asked for consent. Counsel, you see, I asked my question a particular way and I called for a yes or no answer. So let me repeat it. Officer Sejof testified that he asked the defendant if he could search the vehicle and then he asked the defendant if he was on parole. Was that the sequence of events? I do not believe so. So you think that he first said, are you on parole? And the defendant said yes and then he asked him if he could search? Yes. If that weren't the case and if Sejof had asked him for permission to search the vehicle and he said yes, then the parole issue would be no issue at all, would it? So that gets into consent. And so if Mr. I'll try to answer this very briefly. If Mr. Randall had just said yes, he can search without first being notified that the officers knew he was on parole. It's still not voluntary because Mr. Randall knows he cannot say no to a search while he is on parole. So if the police officers ask him if they can get his consent to search the car and he says yes, that's not a valid consent because the defendant knew he was on parole and therefore he realized he couldn't refuse consent. Is that what you're saying? Yes. Well, the exclusionary rule is supposed to be invoked to deter police misconduct. What's the police misconduct that would have occurred under those circumstances? So the exclusionary rule applies to both police misconduct and misconduct by its adjuncts. So if Mr. Randall in that hypothetical situation had still believed himself to be on parole, then there's still misconduct by parole and the parole officer for failing to inform him of his correct release. The exclusionary rule would apply to those circumstances because of your claim that the parole authorities were somehow under an obligation to clear up any confusion defendant may have had whether he was still on parole? Yes, parole has. But meanwhile, from the point of view of the police who are actually asking for consent to search, allegedly received it, and then searched the car, did they do anything wrong? Oh, is this still under the fact pattern where he... They asked for consent to search, he says okay, and then they searched the car. Did they do anything wrong? So in that situation, I would say there's definitely less... No, then they would not have... You're not requiring the police to understand the motive or possibly an incorrect understanding on the part of a defendant when it consents to search is somehow rendering that consent no longer valid. You're not claiming that, are you? No, the good faith exception and the consent issues are two separate issues here. By the way, are you challenging the state's claim that the defendant consented to the search? I am challenging the state's claim that Mr. Randall legally consented to the search. Well, that wasn't totally clear in your brief. The court said, on this point, if I understand correctly, do I believe the defendant gave his consent to search? I do. Normally, that would be the beginning and the end of the inquiry because the trial court is the trier of fact. And short of something in the record that would render the court's finding totally unreasonable, we would accept it. But your claim is that the defendant's consent wasn't valid because of his confusion over whether they were still on parole? Because he believed... Yes, he believed he was still on parole and believed he was still bound by his MSR agreement that required him to submit to searches. Even though the police never said any such thing to him? Yes. And so, perhaps there is confusion in the comparison with Bumper in which an officer did make a representation to the defendant's grandmother in that case. Mr. Randall is not arguing here that he was coerced into giving consent or that his consent was involuntary because of any representations by the police. The coercion and the involuntariness comes from his MSR agreement and his belief that he was still bound by it. In order to find some misconduct or inappropriate behavior by the parole authorities, don't you have to cite some obligation they had to keep the defendant informed about his parole status? Well, a person who is on parole is in the custody of the Illinois Department of Correction. Chancellor, is that a yes? I think that was a yes or no question. I'll repeat it. In order to claim that the parole authority did something wrong by not informing the defendant of his status, don't you have to statute or other basis for there being a requirement on the parole authority to inform the defendant of his parole status? I do not believe there needs to be a citation to some sort of written policy or statute. So, it's just something which they should understand. If we're going to apply the exclusionary rule to the parole authority for not telling the defendant, that's a pretty serious action, is it not? Yes. And shouldn't there be some basis upon which we're going to say they violated duty by not informing the defendant? I think that the duty is inherent in a parolee being in the custody of the defendant. I don't think that there should be a statute or any policy saying that officers were not allowed to do that. Yet, this court still decided that that was misconduct and argued that there was misconduct. Parole officer Ernst did not give Mr. Randall updated release information. He testified that he did not remember having any conversation with Mr. Randall informing him of his updated release date, which shows a disregard for his parolee's status. It sort of has the feel of kind of a Miranda obligation on law enforcement now prior to gaining consent to search a vehicle. They've got to determine the man's on parole, let them know he's off parole. What do you say about that? I think it's very important that someone knows whether they are on parole. Parolees have such diminished expectation of privacy that officers can search them or seize them at any point and for any reason. The Illinois Supreme Court has said that searches of parolees do not have to be consensual and that there doesn't have to be an articulable basis for the search. I think there should be a duty for a government actor to inform a parolee that they do have the right to deny consent. I agree with everything you just said. I'm putting myself in trying to think about this in terms of the way the police officers were dealing with the situation. You've got an allegation of misconduct based on what they knew and how they acted. They're trying to, they've got a suspicion, they are attempting to search the vehicle, they ask for consent and they go in. It just seems far afield to find that they were unreasonable in acting in which the way they did and it seems that we're adding another step for law enforcement going forward. If we set the precedent that they have to have this conversation, duty of notification on the streets to a person potentially on parole prior to asking for consent to search, that seems like a lot to put on officers on the street. So I think to that I would respond by looking at this court's decision in Morgan and the found to be misconduct, gross negligence, things of that reckless disregard, things of that nature. That's what I'm struggling in this case. I don't see where the officer's actions are unreasonable. So I think those cases can be distinguished until you convince us something the officers did was unreasonable, etc. Sure. So it was unreasonable for the officers to and they should have made a quick call to parole to verify the results, which we know that they did because after Mr. Randall was arrested, they called parole to report the violation. And at that point is when they realized that he was off parole. And so it was unreasonable to rely on information. So that's why I asked you the question I did to begin with the very first question in this case, which is that they seek and obtain a consent to search before the discussion of parole arose. Because if the answer to that is yes, then why does any discussion of parole matter as far as what the police did? The evidence in the record shows that asked whether Mr. Randall was on parole immediately before asking for consent. So they didn't ask for consent first. It was whether he's on parole first. Is that your claim from the record? Yes. Okay. Thank you. I see I'm out of time. So if this court has no more questions, I will reserve the rest of my comments for rebuttal. Okay. Ms. Sansonelli, if you had anything else, we asked a lot of questions. We allow you just a minute. But if you're comfortable, we'll continue. I will reserve the rest of my argument. Okay. Thank you. I just recognize we did ask you a lot of questions. All right. Thank you. And then argument. And I understand that Mr. Gilsian, you'll be arguing on behalf of the state. Yep, that's right. Please. All right. Thank you. May it please the court. Counsel, my name is Alex Gilsian, and I'm a 7-11 student representing the State Appellate Prosecutor of Illinois. On March 16, 2021, two police officers witnessed a vehicle in violation of two vehicle codes and also noticed that sitting in the driver's seat was the defendant in this case. The officers admitted that they recognized him as a recent parolee. So they ran his license. They ran his plate through the lead search system, which confirmed their belief that he was on parole. The officers approached the defendant and as a final act of confirmation, asked the defendant himself whether he was on parole, to which he responded, yes. The officers took three measures here, recognizing him as a recent parolee, checking the lead system, and asking the defendant himself whether he was on parole, which all indicated to them that he was. Officer Seha then found it appropriate to ask whether the officers could search the vehicle, to which the defendant responded with an unambiguous, sure. From there, the officers effectuated their search, found hundreds of grams of narcotics, as well as illegal firearms, and arrested the defendant. The defense has correctly pointed out that he was not actually on parole on the night of March 16th. His parole ended just one day before, on March 15th, and he allegedly didn't receive notice by mail that his parole had ended until the day after, on March 17th. However, the defense has incorrectly characterized the events which led up to the search as misconduct, warranting the application of the exclusionary rule. Before you get into that, counsel, could I ask you to summarize the interaction between the officers and the defendant in asking for consent? Yes, your honor. What's your understanding of that? Yes, your honor. So, the officers would approach the vehicle, and they would ask the defendant three things first, before asking for consent to search. Well, and particularly in this case, what we're drilling down to. Yes. What did occur? Okay, thank you. They asked him, so I'm sorry, three things in total. They asked him if there was anything illegal in the vehicle, to which he responded no. They asked him if he was on parole, to which he responded yes, and then they asked if he could search the vehicle, to which he responded sure. So, Ms. Cincinnati is correct that they asked about parole before they asked for consent, is that correct? Yes, the state agrees that is what the record shows. Okay, go ahead. So, the defense has incorrectly mischaracterized the events which led up to this search as misconduct, warranting the application of the exclusionary rule. The exclusionary rule requires that law enforcement engaged in misconduct, that this misconduct could be remedied by exclusion, and that the benefits of exclusion outweigh the costs. None of these three requirements are satisfied here. All of the evidence actually shows that the police took several precautionary steps before effectuating their search, and that notice would have been sent to the defendant as early as possible, as to not risk him receiving the letter early, which could risk wrongfully telling him he was off of parole when he actually wasn't. To address Arnold and Morgan, Arnold and Morgan are incomparable for several reasons. The first is because they address search warrants, which are very, very different than parole status. It's much more likely that someone doesn't know that they have a, I'm sorry, not a search warrant, my apologies. They address arrest warrants rather than parole status. It's much more likely that someone would not know that they had a warrant out for their arrest, rather than not knowing that they are on parole. Also, in both of these cases, the court pointed out that what was important there is that the officers knew that they were relying on incorrect information and proceeded anyway. But in this case, the officers did not know that the information they were dealing with was incorrect. And why would they? I mean, the defendant himself had said that, yes, I am on parole. Furthermore, the defense has also wrongfully classified the defendant's consent to search this vehicle as a mere acquiescence to authority, when the police never did anything to make him think that he was on parole. The trial court correctly found the defendant voluntarily consented to be searched, taking into account the totality of the circumstances. Lastly, the defense failed to mention in their brief that there was marijuana not concealed legally in plain view of the officers right in the cupholders between the driver and passenger seats. The defense counsel has claimed in their reply brief that the marijuana was found during the course of the search, but that isn't made clear in the record. It is only made clear that the cannabis was identified in plain view of the officers by the officers. The officers did not know that the marijuana was concealed. The officers were in the lawful point of view to view the marijuana. The incriminating nature of the marijuana was immediately apparent, and the officers had a lawful right of access to the object. Therefore, the plain view exception applies here and allowed them to search the whole car. If there are no questions, that would conclude my initial argument. I would like to make three points here. First, addressing the plain view argument. The state has just conceded in their argument that the record is unclear of when the officers saw the marijuana. That is the touchstone argument of why plain view cannot apply here because it needs to be clear in the record that the officer was in a place where they had lawful authority to be when they first saw the marijuana. As the state just conceded, there's no evidence in the record of where the officer was when he first saw it. The officer is saying that it was in plain view. For this court to determine that it was in plain view based on his testimony would be an acknowledgment that an officer was making legal conclusions in his testimony, which would be inappropriate. Additionally, the three steps that the state claims the officers took to ensure they were not violating Mr. Randall's rights, all of these steps, these are not adequate safeguards. First, recognizing him as a recent parolee is not enough. In Morgan and Arnold, those officers recognize those defendants as having seen their name recently on the arrest warrant list. Knowing someone at some point was on parole is not sufficient. Second, the Leeds manual says that the result is not grounds for search, arrest, or detention. Relying on Leeds was also inadequate. Finally, asking Mr. Randall he was on parole was also inadequate because officers have the responsibility to ensure they are not violating other citizens' rights. The officers had the responsibility to go to a reliable source, which would be parole, make a quick phone call to parole to ensure the veracity of the information that Leeds gave them. Finally, addressing the state's distinguishing of Arnold and Morgan, the state argued that someone would be more likely to know whether they were on parole than whether they had an arrest warrant out for them. Actually, both defendants in Morgan and Arnold were correct. In terms of likelihood of whether someone would or would not know about an arrest warrant, those facts are just not in Morgan and Arnold. Additionally, the issue in Morgan and Arnold about the officers' knowledge was that officers should have known it was unreasonable to rely on old warrant lists. It goes back to what officers should know whether the source they are using is reliable. Here, as I just argued, they should have known that asking Mr. Randall is not a reliable source, and they should have known that relying on Leeds was also unreasonable. So, we asked this court to find that the circuit court erred in denying Mr. Randall's motion to suppress because the good faith exception does not apply where there is systemic misconduct by the police and law enforcement adjuncts, and Mr. Randall did not voluntarily consent. So, we asked this court to reverse his conviction outright. Thank you. Thank you, Ms. Sansonetti. The court will now stand in recess as we will take the matter under advisement. Thank you.